UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| HOME SAVINGS OF AMERICA,<br><br>              Plaintiff,<br>     v.<br><br>EMELITA FELIPE, et al.,<br><br>              Defendants.<br>_____/ | No. C 12-01419 LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>[Re: ECF No. 50] |

## INTRODUCTION

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), as Receiver for plaintiff Home Savings of America ("Home Savings"), seeks leave to file a Second Amended Complaint ("SAC"). FDIC's Motion, ECF No. 50 at 1.[1] Specifically, FDIC seeks to reassert against Defendant Angelito Reyes ("Mr. Reyes") professional negligence and breach of contract claims, which were previously dismissed by the state court prior to removal. FDIC also seeks to assert, for the first time, a breach of contract/indemnification claim against Defendant Cal Coast Financial Corporation ("Cal Coast"). Pursuant to Civil Local Rule 7-1(b), the court previously found that this matter is suitable for determination without oral argument and vacated the April 18, 2013 hearing. Upon consideration of the applicable authority and the arguments of counsel, the court **GRANTS** FDIC's motion for leave to file a Second Amended Complaint.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

C 12-01419 LB
ORDER

**STATEMENT**

**I. FACTUAL ALLEGATIONS[2]**

On or about April 11, 2007, Home Savings, a federally-chartered financial institution, entered into a mortgage refinance transaction (the "Loan") with Defendant Emelita Felipe ("Ms. Felipe"). FAC, ECF No. 1-3 at 26 ¶ 2.[3] The Loan, which was for the amount of $382,500, was secured by real property located at 7215 Holly Street, Oakland, California 94621 (the "Property"). *Id.* ¶¶ 2, 7. The Loan was brokered by Cal Coast. *Id.* ¶ 3. Cal Coast used Mr. Reyes (doing business as Streamline Appraisals) to perform an appraisal of the Property. *Id.*

Mr. Reyes performed an appraisal of the Property on March 3, 2007 (the "Appraisal") that appraised the value of the Property as $510,000.00. *Id.* ¶ 4. Home Savings alleges that the Appraisal inflated the value of the Property, used inaccurate comparables, omitted the most accurate comparables, failed to note the declining market values in the area, and misrepresented critical factual information about the Property. *Id.* It also alleges that it was an intended third party beneficiary of the Mr. Reyes, and it relied on the Appraisal when deciding whether to enter into the Loan. *Id.* at 28 ¶¶ 22-23. Had the Appraisal been reliable and truthful, Home Savings would not have entered into the Loan. *Id.* ¶ 4.

Ultimately, Ms. Felipe defaulted on the Loan, and Home Savings foreclosed on the Property in July 2009. *Id.* at 30 ¶ 33. In that same month, Home Savings purchased the Property for $182,000 in a Trustee sale. *Id.* at 27 ¶ 10. As a result of Defendants' misrepresentation, Home Savings alleged that it sustained actual and consequential damages of not less than $251,089.24. *Id.* at 33, ¶ 49.

**II. PROCEDURAL HISTORY**

 **A. Pre-Removal Proceedings in State Court**

---

[2] The relevant factual allegations are taken from the First Amended Complaint, which currently is the operative complaint. *See* First Amended Complaint ("FAC"), ECF No. 1-3 at 25-37.

[3] Ms. Felipe has been dismissed without prejudice as a defendant to this case. Therefore, the court's recitation of the relevant factual allegations omit some allegations related to her.

On or about March 25, 2011, Home Savings filed suit against Ms. Felipe, Mr. Reyes, and Cal Coast in Alameda County Superior Court. Notice of Removal, ECF No. 1-1 at 2. In its original complaint, Home Savings brought the following claims: (1) fraudulent misrepresentation (against Ms. Felipe); (2) fraudulent misrepresentation (against Mr. Reyes); (3) negligent misrepresentation (against Mr. Reyes); (4) professional negligence (against Mr. Reyes and Cal Coast); and (5) breach of fiduciary duty (against Cal Coast). *See* Original Complaint, ECF No. 1-2 at 19-30. *See* First Motion to Strike, ECF No. 1-2 at 58-68. Mr. Reyes moved to strike the fraudulent misrepresentation and professional negligence claims brought against him. *See id.* On July 8, 2011, the Superior Court denied the motion with respect to the negligent misrepresentation claim, but, with respect to the professional negligence claim, construed the motion as one for judgment on the pleadings and granted it with leave to amend. 7/8/2011 Order, ECF No. 1-3 at 91. Citing *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 406 & n.16 (1992) and *Soderberg v. McKinney*, 44 Cal. App. 4th 1760, 1768 (1996), the Superior Court stated that "[a] cause of action cannot be stated against an appraiser unless the Plaintiff was the client or a third party beneficiary" and noted that Home Savings "does not allege that it was [Mr. Reyes's] client or a third party beneficiary of the contract" between any Defendants. *Id.*

Home Savings filed a First Amended Complaint. First Amended Complaint ("FAC"), ECF No. 1-3 at 25-37. In it, Home Savings brought the same claims that it brought in its original complaint, and it added two more: a breach of contract claim against Mr. Reyes and a professional negligence claim against Cal Coast. *See* FAC, ECF No. 1-3 at 25-37. Among the new factual allegations, Home Savings alleged, with respect to its professional negligence claim against Mr. Reyes, that Mr. Reyes owed it a direct duty under the "California Administrative Code" to perform real estate appraisal services accurately, competently, and in accordance with appropriate standards of diligence and care and that it was an intended third party beneficiary of those services. *See id.* Mr. Reyes filed a demurrer to the fraudulent misrepresentation, negligent misrepresentation, professional negligence, and breach of contract claims brought against him, and he also moved to strike those claims as well. Demurrer, ECF No. 1-3 at 46-47; Second Motion to Strike, ECF No. 1-3 at 49-50.

On October 20, 2011, the Superior Court overruled the demurrer to the fraudulent

misrepresentation and negligence misrepresentation claims, but granted it with respect to the professional negligence claim. *See* 10/20/2011 Demurrer Order, ECF No. 50-2 at 1. The Superior Court, citing *Bily*, 3 Cal. 4th at 406 & n.16, stated that "[a] cause of action for negligence cannot be stated against Defendant Reyes unless [Home Savings] was the client or an express third [party] beneficiary of the contract between Defendant Cal Coast Financial Corporation and Defendant Reyes." *Id.* The Superior Court denied as moot the demurrer to the breach of contract claim and instead struck it without prejudice because Home Savings "did not have leave to add a claim for breach of contract" (the court explained that "[a] noticed motion is required"). 10/20/2011 Strike Order, ECF No. 50-3 at 1. In light of the these rulings, the Superior Court gave Home Savings 15 days to file a second amended complaint. 10/20/2011 Demurrer Order, ECF No. 50-2 at 2. Home Savings never did so.

On February 24, 2012, roughly 11 months after Home Savings filed suit, the Office of the Comptroller of the Currency closed Home Savings and appointed FDIC as Receiver pursuant to 12 U.S.C. § 1821(c)(2)(A). Notice of Removal, ECF No. 1-1 at 2-3. FDIC then substituted in as plaintiff to this action. *Id.* at 3.

### B. Post-Removal Proceedings in Federal Court

On March 20, 2012, FDIC removed this action pursuant to 12 U.S.C. §§ 1819(b)(2)(A)-(B). Notice of Removal, ECF No. 1 at 1. At the initial case management conference on October 11, 2012, the court established November 12, 2012 as the last day to seek leave to add new parties or amend the pleadings. 10/12/2012 Order, ECF No. 30 at 2.

On February 28, 2013 – over 3 months past the court's deadline for seeking leave to add new parties or amend the pleadings – the parties filed a case management statement in which FDIC alerted the court of its intention to file a motion for leave to file a Second Amended Complaint that adds additional claims against Cal Coast and Mr. Reyes. Statement, ECF No. 45 at 2. Later, at a further case management conference on March 7, 2013, the court told FDIC that if it wished to seek leave to file a Second Amended Complaint, it needed to file and serve a noticed motion.

On March 12, 2013, FDIC did so. Motion, ECF No. 50. With its proposed Second Amended Complaint, FDIC intends to assert the following additional claims: (1) professional negligence

against Mr. Reyes; (2) breach of contract against Mr. Reyes (based on the Appraisal); and (3) breach of contract/indemnification against Cal Coast (based on a newly-discovered agreement between Home Savings and Cal Coast). Mr. Reyes and Cal Coast both oppose FDIC's motion.[4] Cal Coast Opposition, ECF No. 54; Reyes Opposition, ECF No. 56.

## ANALYSIS

### I. LEGAL STANDARD

Under Rule 15, after a responsive pleading is filed, "a party may amend its pleading only with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* This leave policy is applied with "extreme liberality." *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). A court considers five factors to determine whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff previously amended his complaint. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Delay alone is insufficient to justify denial of leave to amend. *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. 1997). Of the factors, prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest weight." *See Eminence Capital*, 316 F.3d at 1052. Absent prejudice or a strong showing on other factors, a presumption exists under Rule 15(a) favoring granting leave to amend. *See id.* The party opposing a motion to amend bears the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

But motions to amend the pleadings filed after the date set in the court's scheduling order must satisfy the more stringent "good cause" showing required under Rule 16. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609.

### II. APPLICATION

---

[4] Although Mr. Reyes's opposition was not timely filed, the court nevertheless considers it for purposes of this order.

**A. FDIC's Proposed Claims against Mr. Reyes**

As explained above, FDIC wants to reassert a professional negligence claim and a breach of contract claim against Mr. Reyes based on Home Savings's alleged status as a third party beneficiary to a contract between Cal Coast and Mr. Reyes for the Appraisal. Mr. Reyes opposes the reassertion of these claims on the grounds that they are futile and that FDIC waited too long to reassert them.

The court first turns to the five factors described above. There is no indication that FDIC seeks to reassert these claims in bad faith, and Mr. Reyes does not argue that he would be prejudiced by their reassertion. This makes sense because there still is plenty of time left in this case (fact discovery currently closes in September 2013 and trial currently is set for March 24, 2014). And, despite Mr. Reyes's statement, the claims do not appear to be futile. *See FDIC v. Gulparast*, No. 5:12-CV-02528-EJD, 2012 WL 5077150 (N.D. Cal. Oct. 18, 2012) (allowing a professional negligence claim to survive the pleading stage where a plaintiff adequately alleged its intended third party beneficiary status).

But there has been a long delay from the time these claims were originally asserted to now, and they could have been reasserted earlier. In 2011, the Superior Court, citing *Bily* and *Soderberg*, dismissed and struck the professional negligence claim and breach of contract claim, respectively, with leave to amend. Yet Home Savings (who was the plaintiff then, and which had different counsel than FDIC does now) did not amend them. It was not until March 2013 that FDIC (who since has taken over as the plaintiff) filed a motion for leave to file a Second Amended Complaint to reassert them. As cover for this delay, FDIC argues that a recent decision by another judge in this District changed the law with respect to when a third party may bring a professional negligence claim against an appraiser, but this is not accurate. In *FDIC v. Gulparast*, Judge Davila concluded that FDIC (which was the plaintiff in that case, too) had adequately alleged its intended third party beneficiary status, in accordance with *Bily* and *Soderberg*, because it alleged that the appraiser included a "Certification # 23," which, according the plaintiff's allegations, "requires an appraiser to acknowledge that certain parties other than the Lender/Client and/or the Intended User, such as '[t]he borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market

participants,' may rely on the appraisal report." *Id.* at *4. Judge Davila thus determined that, "[a]t this stage in the proceedings, it would not be appropriate to determine the intent of the parties to the contract. Rather, the facts as pleaded in the complaint, taken as true, and drawing all inferences in the light most favorable to the non-moving party, sufficiently show that Plaintiff is a member of the class for whose benefit the contract between Swanson and American Prime Funding was made." *Id.* at *5 (citing *Paulson v. CNF Inc.*, 559 F.3d 1061, 1079 (9th Cir. 2009) (reversing the district court's dismissal of a professional negligence claim and holding that a consulting firm may owe a duty to a company's former employees if the employees could be considered a third party beneficiary of the service agreement between the consulting firm and the company); *FDIC v. Grankel*, No. 11–CV–03279, 2011 WL 5975262 at *3–4 (N.D. Cal. Nov. 29, 2011) (holding that Certification # 23 provided a plausible basis on which to plead a third party beneficiary breach of contract claim and denying Defendant's motion to dismiss as to that claim, but declining to hold at the motion to dismiss stage that the FDIC was actually an intended beneficiary of the appraisal)).[5]

The problem for FDIC here is that the arguments that the plaintiff in *Gulparast* made were nothing new—they were based on *Bily* and *Soderberg* and thus could have been made by Home Savings to the Superior Court.  FDIC statement that the Superior Court did not have the "benefit" of the *Gulparast* decision when it sustained the demurrers is true but misses the point; the Superior Court could have had the "benefit" of the arguments that were made in *Gulparast*, had Home Savings made them.

Nevertheless, the court believes that, considering all of the circumstances of this case, allowing FDIC to reassert its claims against Mr. Reyes is appropriate.  As mentioned above, there is plenty of time left in this case to deal with these new claims, and Mr. Reyes does not argue that he would be prejudiced by them.  Again, delay alone is insufficient to justify denial of leave to amend.  *Jones*,

---

[5] The court notes that FDIC states in its motion that "the subject appraisal contains the same 'Certification # 23' cited in Gulparast, and FDIC's proposed SAC has pleaded that Home Savings was an 'intended third-party beneficiary of Reyes's services, expressly entitled to rely on the Appraisal, and entitled to all rights and remedies available to the client of a professional services provider." Motion, ECF No. 50 at 9.  It is true that FDIC alleges in the proposed Second Amended Complaint that it was an intended third party beneficiary, but FDIC alleges nothing about any Certification #23, the allegations about which were crucial to Judge Davila's decision.

127 F.3d at 847 n.8. And although there was a delay from the time the claims originally were dismissed by the Superior Court to the time FDIC filed its motion, the effect of that delay appears to be minimal. Accordingly, the court finds, under the standards articulated above, the court grants FDIC's motion to reassert claims for professional negligence or breach of contract against Mr. Reyes.

**B. FDIC's Proposed Claims against Cal Coast**

In its proposed Second Amended Complaint, FDIC asserts two new claims—one for breach of contract and one for indemnification—against Cal Coast, both of which are based on a recently-discovered written agreement between Cal Coast and Home Savings. *See* Motion, ECF No. 50 at 2. FDIC alleges that "prior to the filing of this action, Cal Coast (by and through its principal, Roger Bakshi) executed multiple agreements, including multiple 'Addendum(s) to New Broker Agreement' (the 'Broker Agreement') with Home Savings." Proposed SAC, ECF No. 50-11 at 7 ¶ 28. FDIC does not attach the Broker Agreement to either its motion or its proposed Second Amended Complaint, but it does allege that it "contained numerous representations and warranties" including:

> 3. Broker's Representations and Warranties. Broker represents and warrants to Lender as follows:
>
> . . .
>
> (c) No statement or representation made or document submitted to the Lender is untrue, inaccurate, incomplete or misleading in any respect whatsoever, and Broker will immediately report to Lender any known or believed to be false, inaccurate, altered, or forged statement, representation or document which may come to its attention.
>
> (d) All documents furnished to Lender have been prepared and executed and copies delivered as required by law. . .
>
> . . .
>
> 6. Indemnification. Broker agrees to indemnify, hold harmless and defend Lender, its agents, servants, directors, officers, employees, successors, assigns, and its affiliates (the "Indemnified Parties" from and against any and all losses, claims, demands, damages, expenses or costs which in any way arise out of or relate to any alleged act or omission or Broker or any of its directors, officers, employees, or agents, whether in connection with an Application, a loan or this Agreement. Broker's indemnification obligations shall include reasonable attorney's fees incurred by any Indemnified Party, with or without suit, in defending against any and all claims by any third parties, including without limitation, Applicants and governmental agencies.
>
> . . .

> 14. Attorneys' Fees. If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connections with any provisions of this Agreement, the prevailing party or parties shall be entitled to reasonable attorney's fees and other costs incurred in the action or proceeding, in addition to any other relief to which it or they may be entitled.

*Id.* at 7-8 ¶ 28. In short, FDIC alleges that Cal Coast's and Mr. Reyes conduct with respect to the Loan breached the Broker Agreement and triggered its indemnification and attorney's fees provisions. *Id.* at 13-14 ¶¶ 54-57.

Cal Coast challenges the addition of these new claims on three grounds. First, Cal Coast argues that FDIC's failure to attach the Broker Agreement to the proposed Second Amended Complaint renders the claim insufficient. Second, it says that the Broker Agreement on which FDIC bases its claim was executed in 2011 and argues that the Broker Agreement has nothing to do with the Loan or the events—which took place in 2007—at issue in this action. Third, Cal Coast argues that FDIC has waited too long to add these new claims.

Looking to the relevant factors, the court concludes that FDIC's proposed claims may be added. There is no indication that FDIC seeks to add it in bad faith. And despite Cal Coast's assertion, there is no undue delay, as FDIC discovered the Broker Agreement in February 2013 and filed its motion for leave to file a Second Amended Complaint within a few weeks. *Cf. Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (holding that an eight-month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable). FDIC could not have previously amended the complaint for this reason as well. Furthermore, Cal Coast does not argue that it would be prejudiced by the addition of this claim, and the court again notes that there still is plenty of time left in this case. Nor is the claim futile. While FDIC admits that this particular Broker Agreement was executed in 2011, FDIC argues that the Broker Agreement's existence suggests that prior broker's agreements might exist as well, and it points out that the reason others may not have been found (yet) is that Cal Coast has not produced any Loan related documents (possibly because Cal Coast apparently shredded them in 2010, prior to the institution of this

action).[6] This is enough at this stage.

FDIC has shown that all of the Rule 15 factors support allowing it to add the claim against Cal Coast. Moreover, in light of the recent discovery of the Broker Agreement, the court finds that FDIC has shown good cause for amendment under Rule 16 as well. *Johnson*, 975 F.2d at 609 ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment").

## CONCLUSION

For the foregoing reasons, the court **GRANTS** FDIC's motion for leave to file a Second Amended Complaint. FDIC may file a Second Amended Complaint that reasserts claims for professional negligence or breach of contract against Mr. Reyes and alleges a claim for breach of contract/indemnification against Cal Coast. FDIC shall file a Second Amended Complaint within 14 days from the date of this order as a new, separate document on the court's ECF system.

This disposes of ECF No. 50.

**IT IS SO ORDERED.**

Dated: May 2, 2013

_____
LAUREL BEELER
United States Magistrate Judge

---

[6] It appears that FDIC attempted to obtain a copy of any agreement between Home Savings and Cal Coast through discovery but Cal Coast responded that "[i]n 2010, responding party shredded and discarded its records regarding loan agreement that occurred in 2007 and prior years." Responses to Request for Documents, ECF No. 50-8 at 4-5.